| | | |
|---|---|---|
| Alejandra Guerrero | ) | |
| | ) | No. 13 C 1567 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Thomas M. Durkin |
| | ) | |
| T-Mobile USA, Inc. | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Alejandra Guerrero filed this lawsuit against her former employer, Defendant T-Mobile USA, Inc. ("T-Mobile"), alleging state law claims under the Illinois Human Rights Act ("IHRA") for a hostile work environment based on sexual orientation ("Count I") and retaliatory discharge based on complaints she made about that hostile work environment ("Count II"). R. 21. T-Mobile asks the Court to grant summary judgment in its favor. R. 38.

### Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Ball v. Kotter*, 723 F.3d 813, 821 (7th Cir. 2013).

To defeat summary judgment, a nonmovant must produce more than "a mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Harris N.A. v. Hershey*, 711 F.3d 794, 798 (7th Cir. 2013). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## Background

As an initial matter, the Court must address Guerrero's failure to respond to T-Mobile's statement of material facts and to submit a statement of additional material facts pursuant to Local Rule 56.1. The Seventh Circuit has "consistently and repeatedly upheld a district court's discretion to require strict compliance with its local rules governing summary judgment." *Bordelon v. Chicago Sch. Reform Bd. of Trustees,* 233 F.3d 524, 527 (7th Cir. 2000) (citing *Midwest Imports, Ltd. v. Coval,* 71 F.3d 1311, 1316 (7th Cir.1995)). Guerrero's failure to comply with Local Rule 56.1 functions as an admission of T-Mobile's version of the facts. L.R. 56.1(b)(3)(B). Such a wholesale admission usually results in a grant of summary judgment to the party whose facts are admitted. *Malec v. Sanford,* 191 F.R.D. 581, 584 (N.D. Ill. 2000) ("Essentially, the penalty for failing to properly respond to a movant's 56.1(a) statement is usually summary judgment for the movant (at least if the movant has done his or her job correctly) because the movant's factual allegations are deemed admitted."). On this basis, the Court deems Guerrero to have admitted T-Mobile's statement of material facts. The Court has

reviewed the facts according to T-Mobile and finds that there is no genuine dispute of material fact, and T-Mobile is entitled to judgment as a matter of law. T-Mobile's motion for summary judgment is granted for this reason.

Even though she failed to comply with Local Rule 56.1, Guerrero did file an affidavit and response purporting to state her version of the facts.[1] Since these facts were not presented in the form prescribed by Local Rule 56.1, they are properly disregarded. *Perrywatson v. United Airlines, Inc.*, 762 F. Supp. 2d 1107, 1115 (N.D. Ill. 2011) *aff'd sub nom. Perrywatson v. United Air Lines, Inc.,* 527 F. App'x 559 (7th Cir. 2013) (noting, where plaintiff failed to follow the local rules and instead submitted a short affidavit on which she relied, that Rule 56.1 does not allow for such a substitution) (citing *FTC v. Bay Area Bus. Council, Inc.*, 423 F.3d 627, 632 (7th Cir. 2005)); *Dunhill Asset Servs. III, LLC v. Tinberg,* 2012 WL 3028334, at *3 (N. D. Ill. July 23, 2012) ("Under settled law, facts asserted in a brief but not presented in a Local Rule 56.1 statement are disregarded in resolving a summary judgment motion.") (internal quotation marks omitted). Nevertheless, as the Court discusses below, even if Guerrero's version of the facts was properly admitted on this motion, those facts do not demonstrate a genuine dispute of material fact sufficient to defeat summary judgment.

---

[1] T-Mobile argues that Guerrero's affidavit and response, R. 44 and R. 44-1, should be stricken because they were filed one week late. T-Mobile also argues that the affidavit should be stricken as unsigned and unsworn. R. 46 at 1. Guerrero's initial affidavit, R. 44-1, was unsigned and unsworn. However, she filed a corrected signature page to her affidavit three weeks later, R. 45-1, which was signed and sworn. The Court will not strike the affidavit or Guerrero's response on the basis of timeliness. However, as noted, the facts in both the response and affidavit were not presented in the form prescribed by Local Rule 56.1.

T-Mobile is a nationwide provider of wireless communication services, with retail locations throughout the United States. R. 40 ¶ 1. Guerrero worked as a part-time Retail Sales Associate ("RSA") at the River Oaks Mall in Calumet City, Illinois (the "River Oaks Store") from January 27, 2009 until she and African-American coworker Eric Baker were terminated on August 19, 2011 for engaging in a vulgar and "race-tainted" verbal altercation. *Id.* ¶ 2. In addition to Guerrero, who is homosexual, the River Oaks Store employed several other RSAs, including Eric Baker, and two Retail Associate Managers ("RAMs")—Levar Lloyd and Tamika Watkins. *Id.* ¶ 3; R. 21 at 3.

Although the word "manager" appears in their title, neither Lloyd nor Watkins had the authority to effect any change in the employment status of any other employee, including disciplining, hiring, firing, promoting, reassigning, changing benefits, or otherwise taking any tangible employment actions against any other employee. R. 40 ¶ 4. In 2011, all River Oaks Store employees, including Guerrero, Baker, Lloyd and Watkins, reported directly to Store Manager Richard Perry. *Id.* ¶ 5. Perry and District Managers Eric Velez and Nem Bulic had the authority to discipline and terminate employees of the River Oaks Store with the approval of the then-Senior Manager of Human Resources, Adam Krupa. *Id.* ¶ 6.

T-Mobile maintains a detailed Equal Employment Opportunity Policy ("EEO Policy") in its Code of Conduct Manual ("Manual"). *Id.* ¶ 7. The EEO Policy states that "[a]ll decisions concerning the employment relationship will be made without regard to age, race, color, religion, creed, sex, *sexual orientation*, national origin,

marital status, veteran status, the presence of any physical or mental disability, or any other status or characteristic protected by federal, state, or local law." *Id.* ¶ 8 (emphasis added). Additionally, the EEO Policy expressly prohibits discrimination, harassment and retaliation, and states that "T-Mobile employees have the right to work in an environment that is free of unlawful discrimination and harassment" based upon sexual orientation. *Id.* ¶ 9. The Manual also contains a complaint procedure which requires employees who believe that they have been harassed to report the harassment to the Human Resources Department and/or to a member of management, and the last page of the Manual contains multiple telephone numbers, intranet portals, internet sites, and addresses employees can utilize when they have employment-related issues of any kind, including harassment issues *Id.* ¶ 10.

Guerrero signed an Employee Acknowledgment form certifying that she had read and would periodically review the Manual and that she understood the following:

> It is not always possible for the Company to be aware of all of the conduct of concern to its employees. I must report any conduct that I believe is improper under T-Mobile's . . . non-harassment, non-retaliation and other policies to my management team, another appropriate supervisor and managers and/or a Human Resources representative.

*Id.* ¶ 11.

Guerrero alleges that fellow RSA Baker made three derogatory comments regarding her sexual orientation during the 10-day period preceding the August 11, 2011 altercation resulting in their terminations. *Id.* ¶ 12. Guerrero's Illinois

Department of Human Rights ("IDHR") Charge is attached to her Amended Complaint and is a sworn statement. In that document, Guerrero states that the harassment began on July 31, 2011, but then references comments beginning on August 1, 2011. *Id.* ¶ 13. Guerrero alleges that the following occurred between August 1 and August 10, 2011: (1) Baker said to her "since you fuck bitches, do you pee standing up" on two occasions; and (2) Baker said to her "do you think you're a dude because you're with girls." *Id.* ¶ 14. Store Manager Perry was on a medical leave of absence during the time period when Guerrero claims the harassment occurred, and the ranking (and only) onsite supervisor at the time was Hillary Knudsen, the Store Manager of a T-Mobile Kiosk also located in the River Oaks Mall. *Id.* ¶ 15. Before Perry went on medical leave, Baker made no comments to Guerrero regarding her sexual orientation. *Id.* ¶ 16. Guerrero did not report any of Baker's pre-August 11, 2011 harassing comments to Knudsen or to T-Mobile's Human Resources Department. *Id.* ¶ 17. Guerrero told only RAM Levar Lloyd that Baker had made these comments at some point during the 10-day period during which they were made. *Id.* ¶ 18.

On August 11, 2011, Guerrero and Baker engaged in a verbal altercation (the "August 11 altercation") on the store floor where each raised their voices and used racially offensive and other inappropriate language, including use of the words "fuck" and "nigga" multiple times. *Id.* ¶ 19. Guerrero states in her affidavit and response that following the altercation, she complained to both RAM Levar Lloyd and RAM Tamika Watkins and that neither took any action to remedy the

situation. R. 44 ¶ 5; R. 44-1 ¶ 12. Guerrero called Hillary Knudsen to report the incident and asked Knudsen if she could leave for the day; Knudsen granted Guerrero's request. R. 40. ¶ 20. During the telephone conference, Guerrero told Knudsen that she and Baker engaged in a vulgar and offensive verbal altercation. *Id.* ¶ 21.

Guerrero contacted T-Mobile's Human Resources Department regarding the altercation and Sr. Human Resources Manager Adam Krupa initiated an immediate investigation. *Id.* ¶ 22. Knudsen also contacted Krupa on August 11, 2011 to report the incident between Guerrero and Baker. *Id.* ¶ 23. At Krupa's request, District Manager Bulic called Guerrero on August 11, 2011 and Guerrero summarized the altercation. *Id.* ¶ 24. During Guerrero's phone conversation with Bulic, Guerrero admitted to using racially offensive and other inappropriate language during the altercation with Baker. *Id.* ¶ 25. Guerrero and Baker were both asked to draft a summary of their recollections of the altercation, and they emailed their statements to Bulic on August 14, 2011 (Guerrero) and August 15, 2011 (Baker). *Id.* ¶ 26.

In her August 14 email to Bulic, Guerrero confirmed what she had already told Bulic over the telephone and elaborated on that conversation. *Id.* ¶ 27. She admitted to taking sunglasses Baker had placed on her head and throwing them, arguing aggressively with Baker, using the word "fuck" three times and using the word "nigga" six times (Baker is African-American, Plaintiff is not), all in front of a customer and other employees. *Id.* ¶ 28. Guerrero also stated in her email to Bulic that Baker said "oh cuz you fuck bitches you think you a nigga." *Id.* ¶ 29.

Neither Bulic nor Krupa knew Guerrero was homosexual until she submitted her statement referencing Baker's inappropriate comment. *Id.* ¶ 30. In Baker's August 15, 2011 email to Bulic, he admitted to participating in the altercation by placing the sunglasses on Guerrero's head and by arguing with her. *Id.* ¶ 31. He also admitted to saying "you think because you mess with girls that you can beat up a guy." *Id*. The River Oaks Store is in a mall where the entire front of the store is open to the mall and mall patrons could have heard or witnessed the altercation between Guerrero and Baker without being physically present inside the store. *Id.* ¶ 32.

Bulic forwarded both Guerrero's and Baker's August 14 and 15, 2011 emails to Krupa and left on August 15, 2011 for a previously scheduled two-week vacation. *Id.* ¶ 33. After reviewing Guerrero's and Baker's statements and discussing the matter with Bulic, Krupa decided that termination of both employees was appropriate. *Id.* ¶ 34. Krupa decided that Guerrero's termination was appropriate because she admitted in writing and/or in her interview with Bulic that: (1) she argued aggressively with Baker and threw sunglasses in the store; (2) she used the word "nigga" six times during the argument with Baker, who is African-American; (3) she used the word "fuck" three times during the argument with Baker; (4) she raised her voice during the argument with Baker; and (5) all this took place in front of other employees, a customer, and possibly mall patrons walking by the store. *Id.* ¶35. Based on Guerrero's August 14 statement, it was Krupa's belief that a customer was present during the altercation; however, Krupa noted that he would

have made the same decision even if a customer had not been present. *Id*. Krupa also believed it was possible that other mall patrons walking by the store could have heard or witnessed Guerrero's conduct. *Id*. ¶ 36.

Krupa also decided that Baker's termination was appropriate because: (1) Baker admitted to being involved in the altercation with Guerrero; (2) Baker admitted to making a derogatory reference regarding Guerrero's sexual orientation; (3) Guerrero's allegations against Baker were believable; and (4) like Guerrero's conduct, Baker's conduct took place in front of a customer, other employees, and possibly mall patrons walking by the store. *Id*. ¶ 38. Again, based on Guerrero's August 14 statement, it was Krupa's belief that a customer was present during the altercation; however, Krupa stated that he would have made the same decision even if a customer had not been present. *Id*.

Because Bulic was on vacation at the time that Krupa decided on the terminations, Krupa asked another District Manager, Eric Velez, to personally interview Guerrero and Baker to determine whether Velez shared Krupa's belief that Guerrero and Baker should both be terminated. *Id*. ¶ 39. Neither Krupa nor Velez had ever had to address any workplace misbehavior issue like the one presented here, where two employees argued with raised voices in a vulgar and offensive exchange on the store floor. *Id*. ¶ 50. Krupa provided Velez with the August 14 and August 15 emails and informed Velez that he had Krupa's authority to terminate both employees if he felt termination was appropriate after interviewing the two employees. *Id*. ¶ 40.

Velez met with Guerrero and Baker at the River Oaks Store separately on August 19, 2011 in order to discuss the altercation. *Id.* ¶ 41. Velez asked Guerrero to describe what happened during the altercation, and Guerrero repeated what was in her written statement; Guerrero was as graphic in her conversation with Velez as she was in her written statement. *Id.* ¶ 42. Velez then called Baker into the office and asked him to explain what had happened during the altercation with Guerrero. *Id.* ¶ 44. Baker recounted a "softened" version of what was in his written statement during his conversation with Velez, but admitted to participating in the altercation with Guerrero. *Id.* ¶ 45

Based upon Velez's review of Guerrero's August 14 email, as well as his in-person interview with Guerrero, he agreed with Krupa that Guerrero should be terminated for the same reasons articulated by Krupa. *See supra.* at 8. Additionally, Based on Guerrero's August 14, 2011 statement, Velez agreed with Krupa that a customer was present at the time of the altercation; however, Velez would have made the same decision even if a customer had not been present in the store. *Id.* ¶ 46.

Based upon Velez's review of Baker's August 15, 2011, as well as Velez's in-person interview with Baker, Velez agreed with Krupa that Baker should be terminated for the same reasons articulated by Krupa. *See supra.* at 9. Although, as noted, Velez believed that a customer was present in the store at the time of the altercation, he would have made the same decision even if a customer had not been present. *Id.* ¶ 47.

Velez communicated the termination decision to both Guerrero and Baker that same day, on August 19, 2011. *Id.* ¶ 48.

## Discussion

## A. Hostile Work Environment Based on Sexual Orientation

In determining what constitutes harassment and a hostile work environment under the IHRA, Illinois courts and the Illinois Department of Human Rights have examined federal decisions under Title VII as the prohibition of harassment in the Act closely parallels that found in Title VII. *Trayling v. Bd. of Fire & Police*, 652 N.E.2d 386, 393 (Ill. App. Ct. 2d Dist. 1995); *Bd. of Trustees of S. Illinois Univ. v. Knight*, 516 N.E.2d 991, 995 (Ill. App. Ct. 5th Dist. 1987) (recognizing that "[i]n analyzing claims of discrimination under the Act, Illinois courts have looked to the standards applicable to federal claims brought under Title VII"). Because Title VII, Section 1981 and IHRA claims use the same standards, a plaintiff's failure to establish a prima facie case of discrimination under Title VII for a given employment action necessarily forecloses Section 1981 and IHRA claims arising from the same conduct. *Hoosier v. Greenwood Hospitality Management LLC*, 32 F. Supp. 3d 966, 975 (N.D. Ill. 2014) (citing *Johnson v. City of Fort Wayne*, 91 F.3d 922, 940 (7th Cir. 1996)).

To establish a prima facie case for a hostile work environment claim, Guerrero must show: (1) that she was subject to unwelcome harassment; (2) the harassment was based on her sexual orientation; (3) the harassment was so severe or pervasive as to alter the conditions of her work environment by creating a hostile

or abusive situation; and (4) there is a basis for employer liability. *Zayas v. Rockford Mem'l Hosp.*, 740 F.3d 1154, 1159 (7th Cir. 2014) (noting elements for a hostile work environment based on national origin and citing *Lucero v. Nettle Creek Sch. Corp.,* 566 F.3d 720, 731 (7th Cir. 2009)). The Court's analysis will focus on the fourth requirement: employer liability.

Guerrero claims that employer liability exists because T-Mobile had previous knowledge of Baker's discrimination against her and failed to do anything about it, despite having a formal written policy prohibiting the conduct. R. 44 ¶ 4. There is no factual dispute that T-Mobile had a reasonable policy for preventing harassment. The undisputed facts include:

- T-Mobile's EEO Policy in its Manual expressly prohibits discrimination, harassment and retaliation, and states that "T-Mobile employees have the right to work in an environment that is free of unlawful discrimination and harassment" based upon sexual orientation. R. 40 ¶ 9.

- The Manual also contains a complaint procedure which requires employees who believe that they have been harassed to report the harassment to a supervisor, manager, or Human Resources Department and/or to a member of management, and the Manual contains multiple telephone numbers, intranet portals, internet sites, and addresses employees can utilize when they have employment-related issues of any kind, including harassment issues. *Id.* ¶ 10.

- Additionally, Guerrero signed an Employee Acknowledgment form certifying that she had read and would periodically review the Manual and that she understood that:

   "It is not always possible for the Company to be aware of all of the conduct of concern to its employees. I must report any conduct that I believe is improper under T-Mobile's . . . non-harassment, non-retaliation and other policies to my management team, another appropriate supervisor and managers and/or a Human Resources representative." *Id.* ¶ 11.

Guerrero does not dispute the fact that such a policy was in place or that she signed it. She claims that management did not apply good faith efforts to address her complaints about Baker's comments and behavior regarding her sexual orientation. R. 44 ¶ 4.

Guerrero alleges only that coworker Eric Baker, and no other employee, perpetrated the harassment. R. 40 ¶ 49. There is no dispute that Baker was Guerrero's coworker, not her supervisor. In that case, Guerrero must show a basis for employer liability by proving that T-Mobile was negligent in discovering or remedying harassment by her coworkers. *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 390 (7th Cir. 2010) (citing *Andonissamy v. Hewlett–Packard Co.,* 547 F.3d 841, 848 (7th Cir. 2008)). In other words, "[a]n employer satisfies its legal duty in coworker harassment cases 'if it takes reasonable steps to discover and rectify acts of . . . harassment of its employees.'" *Cerros v. Steel Techs., Inc.*, 398 F.3d 944, 952 (7th Cir. 2005) (quoting *Parkins v. Civil Constructors of Ill., Inc.,* 163 F.3d 1027, 1032 (7th Cir. 1998)).

"Notice that is sufficient to trigger employer liability must be given to either someone with authority to take corrective action or, at a minimum, someone who could 'reasonably be expected to refer the complaint up the ladder to the employee authorized to act on it.'" *Parker v. Side by Side, Inc.*, No. 12 CV 7204, 2014 WL 2932211, at *11 (N.D. Ill. June 27, 2014) *(*quoting *Lambert v. Peri Fireworks Systems, Inc.,* 723 F.3d 863, 866-67 (7th Cir. 2013) (quoting *Parkins,* 163 F.3d at 1037)). If the employer has established procedures for reporting complaints of

harassment, "the complainant ordinarily should follow that policy in order to provide notice sufficient for the employer to be held responsible, unless the policy itself is subject to attack." *Lambert*, 723 F.3d at 867. "The focus of the notice inquiry, however, remains on whether the complainant adequately alerted his employer to the harassment, 'not whether [the complainant] followed the letter of the reporting procedures set out in the employer's harassment policy.'" *Parker*, 2014 WL 2932211, at *11 (quoting *Cerros,* 398 F.3d at 952-53).

T-Mobile's EEO Policy sets forth several options an individual may pursue in addressing harassment, including speaking with a supervisor, manager, or Human Resources representative. R. 40-4 at 12-13. Guerrero claims in her affidavit that "during the week of August 1, 2011," the day after an incident with Baker where he made comments referencing her sexual orientation, she reported the incident to Lloyd, who did not take any action. R. 44-1 ¶¶ 4-7. She also claims in her affidavit and response that after the August 11 altercation, she complained to Lloyd again and to Watkins. R. 44 ¶ 5; R. 44-1 ¶ 12. That same day, when Lloyd and Watkins took no action, Guerrero contacted Kiosk Manager Knudsen, who told Guerrero she would contact District Manager Bulic. R. 44-1 ¶¶ 13-14.

Even considering Guerrero's assertions in her response and affidavit, her claim fails to establish a basis to find T-Mobile negligent. Guerrero did not make a concerted effort to inform T-Mobile of Baker's harassing comments before August 11 by simply reporting them to Lloyd. *See, e.g., Montgomery*, 626 F.3d at 391 (citing *Rhodes v. Ill. Dep't. of Transp.*, 359 F.3d 498, 507 (7th Cir. 2004) (noting a plaintiff

must demonstrate that she "made a concerted effort to inform [her employer] of the . . . harassment [s]he was allegedly experiencing."). The evidence does not show that Lloyd could reasonably be expected to refer the complaint up to someone with authority to address it. *Lambert*, 723 F. 3d at 867 (noting that a "[f]ocus on whether the information comes to the attention of someone who ought by specification of his duties or, failing that, general norms of management to do something about it, either directly or by referring the matter to some other corporate employee, is a better, . . . more practical, approach than asking at what level in a corporate hierarchy an employee is.") (citations and internal quotations omitted); *see also Yannick v. Hanna Steel Corp.*, 653 F.3d 532 (7th Cir. 2011) (given the limited duties and authority of the plaintiff's immediate supervisor (a low-level supervisor who had no authority to hire, fire, transfer, or discipline any employees)), plaintiff's awareness of the company's harassment policy and chain of command, and the supervisor's unwillingness and refusal to address the situation, it was unreasonable for plaintiff to believe that the supervisor would convey his complaints up the ladder). Guerrero further claims in her response that she "was unaware that Levar Lloyd . . . was unable to take any disciplinary action against Baker." R. 44 ¶ 3. The record reflects that though Lloyd's title included the word "manager," he was not Guerrero's supervisor or a human resources representative. It is undisputed that Lloyd did not have the authority to discipline, hire, fire, promote, reassign, change benefits or otherwise take any tangible employment actions against or effect any change in the employment status of any other River Oaks Store (or other) employee.

R. 40 ¶ 4. Additionally, in 2011, all River Oaks Store employees, including Guerrero, Baker, Lloyd and Watkins, reported directly to Store Manager Richard Perry. *Id.* ¶ 5. Beyond Guerrero's unsupported assertions, there is no evidence showing that T-Mobile expected its Retail Associate Managers (like Lloyd) to pass that type of complaint up the chain to the human resource managers. Even if complaining to Lloyd initially was reasonable, if Lloyd did not act, Guerrero should have taken the issue to someone who could act. There is no reason she could not have complained to Knudsen, who was Store Manager of a T-Mobile Kiosk in the same mall. R. 40 ¶ 15. At that point, "any reasonableness quickly evaporated when [Guerrero's] request for relief went unanswered." *Parker*, 2014 WL 2932211, at *13 (quoting *Yannick*, 653 F.3d at 550); *see also Parkins,* 163 F.3d at 1038 ("A reasonable person, realizing that her complaints were ineffective, would then seek a remedy elsewhere.")).

Indeed, it is undisputed that following the August 11 incident, Guerrero reported it to her acting supervisor Knudsen and to Human Resources in accordance with the chain of command under the complaint procedure. Even if, as Guerrero claims in her affidavit, she complained of the August 11 incident first to Lloyd and Watkins, who did nothing, it is undisputed that she then reported the fight and vulgar exchange to acting supervisor Knudsen and to Human Resources on the same day. R. 40 ¶¶ 19-23. Tellingly, after the August 11 incident, Guerrero called Knudsen and asked for permission to leave for the day. Guerrero obviously considered Knudsen to be a supervisor who had the authority to allow her to take

the rest of the day off. *Parker*, 2014 WL 2932211, at *13 (N.D. Ill. June 27, 2014) (finding that given the plaintiff's acknowledgement of the chain of command for making formal harassment complaints and the prior "brushing off" by two supervisors of the plaintiff's complaints, it was unreasonable for him to believe that those same supervisors would convey his complaints up the ladder to company management). Guerrero's actions clearly demonstrate that she knew the proper procedure for complaining about harassment and putting the company on notice, failed to follow it for the pre-August 11 conduct, and followed it on August 11. R. 40 ¶¶ 19-23.

Additionally, there is no evidence of T-Mobile's constructive notice of Baker's harassing comments toward Guerrero prior to August 11, 2011. "[A]n employer is considered to have constructive notice of a hostile work environment where the harassment was sufficiently obvious." *See Downey v. Briscoe*, No. 09 C 5870, 2013 WL 6230611, at *5 (N.D. Ill. Nov. 29, 2013) (citations and internal quotation marks omitted). Guerrero has not presented evidence that the harassment she suffered was so pervasive and obvious that T-Mobile can be found to have constructive knowledge of the harassment. *See Parker*, 2014 WL 2932211, at *13 (citing *Rhodes*, 359 F.3d at 506-07) (finding plaintiff failed to set forth sufficient evidence to charge her employer with constructive knowledge of harassment where the plaintiff made a single complaint about a pornographic picture in her locker, the plaintiff presented no evidence that anyone else complained about the pornographic materials, and other employees kept a "lookout" to alert them if someone approached while they

watched pornographic videos at work)); *Zupan v. State*, No. 95 C 1302, 1999 WL 281344, at *7 (N.D. Ill. Mar. 31, 1999) (noting constructive knowledge may exist where there have been previous complaints to the employer about the supervisor) (citations omitted).

With regard to the August 11 altercation, T-Mobile clearly took reasonable steps to discover and rectify Baker's harassment after Guerrero reported it to Knudsen and Human Resources on the day that it occurred. When Knudsen and Human Resources were notified on August 11, Senior Human Resources Manager Krupa initiated an immediate investigation. R. 40 ¶ 22. As part of the investigation, District Manager Bulic interviewed Guerrero over the phone and then obtained written statements from Guerrero and Baker just a few days after the altercation took place. *Id.* ¶¶ 24, 26. Further, Krupa discussed the incident with Bulic, reviewed the written statements himself, provided them to District Manager Velez, and asked Velez to interview Guerrero and Baker. *Id.* ¶¶ 33-34, 39-40. Velez then personally interviewed Guerrero and Baker to determine whether he, like Krupa, believed that terminating Guerrero and Baker was an appropriate response to their conduct (including Baker's earlier references to Guerrero's sexual orientation). *Id.* ¶¶ 41-44.

T-Mobile's investigation, initiated as soon as Guerrero complained to her acting supervisor and Human Resources, and its termination of Baker within a week of making the comment (which was also within two weeks of which he made the additional comments) demonstrates that T-Mobile satisfied its legal duty to take

"prompt and appropriate corrective action reasonably likely to prevent the harassment from recurring." *Porter v. Erie Foods, Int'l*, 576 F.3d 629, 636 (7th Cir. 2009) (citations omitted). T-Mobile could not have acted in a more appropriate and legally proper way than it did. *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 978 (7th Cir. 2004) (citing *Tutman v. WBBM-TV, Inc./CBS, Inc.*, 209 F.3d 1044, 1048 (7th Cir. 2000) (noting that "[i]n hostile work environment cases, the employer can avoid liability for its employees' harassment if it takes prompt and appropriate corrective action reasonably likely to prevent the harassment from recurring.")). There is no evidence from which a reasonable factfinder could conclude that a basis for employer liability exists. Therefore, summary judgment in T-Mobile's favor is appropriate on Guerrero's hostile work environment claim and there is no need to address T-Mobile's additional arguments.

## B. Retaliatory Discharge

Guerrero claims she was terminated in retaliation for complaining about Baker's comments regarding her sexual orientation. She argues that summary judgment on her retaliation claim is inappropriate because she met all of T-Mobile's employment expectations prior to the altercation, T-Mobile condoned Baker's comments and behavior because Lloyd and Watkins did not take action against Baker after the August 11 altercation, and shortly after the altercation, on August 19, 2011, she was terminated. R. 44 ¶ 5.[2]

---

[2] To the extent Guerrero argues that Lloyd and Watkins' failure to take action after she told them of the August 11 incident evidences suspicious circumstances in support of proving her claim, that argument fails. Clearly, Lloyd and Watkins were

Illinois courts apply the same standard to IHRA retaliation claims that federal courts apply to Title VII retaliation claims. *Marshall v. Family Dollar Stores, Inc.*, No. 11 C 1477, 2012 WL 1117897, at *2 (N.D. Ill. Apr. 3, 2012) (citing *Zaderaka v. Ill. Human Rights Comm'n,* 545 N.E.2d 684, 687 (Ill. 1989) ("In analyzing employment discrimination actions brought under the Human Rights Act, the [Illinois Human Rights] Commission and the Illinois appellate court have adopted the analytical framework set forth in United States Supreme Court decisions addressing claims brought under Title VII of the Civil Rights Act of 1964 . . . . This court will follow the same approach.") (citations omitted)). Guerrero may prove her claim through either the direct or indirect methods of proof. *Marshall*, 2012 WL 1117897, at *3 (citing *Coleman v. Donahoe,* 667 F.3d 835, 859 (7th Cir. 2012)). Under the direct method, a plaintiff "must present evidence of (1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two." *Turner v. The Saloon, Ltd.,* 595 F.3d 679, 687 (7th Cir. 2010) (citations and internal quotation marks omitted). "Under the direct method, a plaintiff must offer direct evidence of discrimination—an outright admission that an action was taken for discriminatory reasons—or circumstantial evidence that points to discriminatory animus through a longer chain of inferences." *Everett v. Cook Cnty.*, 655 F.3d 723, 729 (7th Cir. 2011) (citing *Van Antwerp v. City of Peoria, Ill.*, 627 F.3d 295, 298 (7th Cir. 2010)). Guerrero presents no direct evidence of retaliation and addresses elements of the indirect

---

not in a position of authority and those who were—Knudsen and Human Resources—promptly started an investigation into the incident.

method of proof.[3] The Court will therefore examine the facts under the indirect method.

Under the indirect method, a plaintiff must show that: "(1) she engaged in a statutorily protected activity; (2) she performed her job according to her employer's legitimate expectations; (3) despite her satisfactory job performance, she suffered an adverse action from the employer; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity." *Sitar v. Indiana Dep't. of Transp.*, 344 F.3d 720, 728 (7th Cir. 2003) (citations omitted). If the plaintiff meets these requirements, the burden shifts to the defendant to articulate a legitimate reason for its actions. *Id.* If the defendant meets this burden, then the plaintiff must show that its proffered reason is pretextual. *Id.* If the plaintiff cannot show pretext, she cannot proceed with her retaliation claim and summary judgment is appropriate. *Woolner v. Flair Commc'ns Agency, Inc.*, No. 01 C 6043, 2004 WL 2032717, at *8-9 (N.D. Ill. Aug. 30, 2004) (citations omitted).

There are at least two reasons why summary judgment is appropriate on Guerrero's retaliation claim, before any burden shifts to T-Mobile. First, Guerrero cannot demonstrate that she was meeting T-Mobile's legitimate performance expectations at the time of her termination. Guerrero admits that she engaged in

---

[3] To the extent Guerrero pursues the direct method of proof by arguing an inference of causation due to the timing of her termination, R. 44 ¶ 5, her claim fails. Guerrero presents no direct evidence of retaliation and the only circumstantial evidence that she presents is the timing of her termination, which is not suspicious in light of her August 11 altercation with Baker. Additionally, there is no other evidence that supports the inference of a causal link. *See Scaife v. Cook Cnty.*, 446 F.3d 735, 742 (7th Cir. 2006).

the conduct during the August 11 altercation that resulted in her termination. Specifically, Guerrero admitted in her conversations with District Managers Bulic and Velez and in her written statement to Bulic that she engaged in an offensive verbal altercation with Baker where she threw sunglasses, raised her voice, used the word "fuck" three times and used the word "nigga" six times, all in front of a customer and other employees (and possibly mall patrons walking by the store). R. 40 ¶¶ 25, 28, 42. Guerrero also admitted at her deposition that she engaged in that conduct. *Id.* ¶ 28. By admitting to that conduct, Guerrero cannot demonstrate that she was meeting T-Mobile's legitimate performance expectations at the time of her termination. No reasonable factfinder could find otherwise.

Second, Guerrero has presented no evidence that she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. To establish her prima facie case, Guerrero must identify a similarly-situated employee outside of her protected class whom T-Mobile treated more favorably. *Montgomery*, 626 F.3d at 394. Coworkers are "similarly situated," if "directly comparable to the plaintiff in all material respects." *Id.* at 395 (quotations omitted). A plaintiff must show that she and an alleged comparator "engaged in similar conduct without such different or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Hall v. T.J. Maxx of IL, LLC*, No. 12 CV 9488, 2014 WL 3860306, at *6 (N.D. Ill. Aug. 6, 2014) (quoting *Hanners v. Trent*, 674 F.3d 683, 692-93 (7th Cir. 2012) (quotations omitted)). A plaintiff is also required to demonstrate that she has been treated differently than a

non-complaining employee by the same decision-makers. *Coleman v. Donahoe*, 667 F.3d 835, 848 (7th Cir. 2012) (citations omitted).

The only alleged comparable here is Baker, who engaged in the altercation with Guerrero and was terminated by the same person and for the same reason as Guerrero—for engaging in an altercation where both he and Guerrero each used vulgar and offensive language with raised voices in front of a customer, other employees, and possibly mall patrons. R. 40 ¶¶ 38, 47. Guerrero fails to establish that any other employee who did not engage in statutorily protected activity was treated more favorably than she was. No reasonable factfinder could find otherwise. Her retaliation claim thus fails.

## Conclusion

For the reasons stated, T-Mobile's motion for summary judgment, R. 38, is granted.

ENTERED:

_Thomas M Durkin_
Thomas M. Durkin
United States District Judge

Dated: March 6, 2015